IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **JESUS QUIROZ,** for himself and, as a representative action, on behalf of other persons similarly situated,<br>**Plaintiff**<br>vs.<br><br>**SOTT CRANE, MARGO AND JONES, IN., AUTOWASH CORP., SCC SERVICES CORPORATION and CCN SERVICES CORPORATION,** each individually and d/b/a **CARWASH CARWASH**,<br>**Defendants** | § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO. M-04-100** |

## OPINION AND ORDER

Pending before the Court are Defendants' Objections to Order Signed January 12, 2005 and Defendants' Opposed Motion for Rehearing and Motion to Vacate Said Order [Doc. No. 93]; Plaintiff's Response in Opposition to Defendants' Objections to Order Signed January 12, 2005 and Defendants' Opposed Motion for Rehearing and Motion to Vacate Said Order [Doc. No. 99]; Plaintiff's Motion to Unseal Information [Doc. No. 92]; Defendants' Response to Plaintiff's Motion to Unseal Information [Doc. No. 96]; Plaintiff's Reply to Defendants' Response to Plaintiff's Motion to Unseal Information [Doc. No. 104]; Plaintiff's Motion for Extension of Opt-In Period [Doc. No. 100]; and Defendants' Response and Objections to Plaintiff's Motion for Extension of Opt-In Period [Doc. No. 109]. Defendants have filed a Comprehensive Argument and Briefing in Support of Motion to Vacate Order Signed on January 12, 2005 and Proposed Notice [Doc. No. 117]. Plaintiffs

have filed a Response to Defendant's Comprehensive Argument and Briefing in Support of Motion to Vacate Order Signed on January 12, 2005 and a Supplement to Plaintiff's Response to Defendant's Comprehensive Argument and Briefing in Support of Motion to Vacate Order Signed on January 12, 2005 [Doc. Nos. 118 & 119].

## I. Procedural Background

On April 1, 2004, Jesus Quiroz, individually and on behalf of others similarly situated, filed suit against Scott Crane and Margo and Jones, Inc. d/b/a Carwash Carwash. Predicated on the belief that Carwash Carwash is a "single enterprise" consisting of five locations owned and operated by Scott Crane and the corporate defendants, Plaintiff filed an amended complaint on November 8, 2004 and included SCC Services Corporation and CCN Services Corporation as Defendants in the lawsuit. (hereinafter collectively referred to as "Carwash Carwash"). Plaintiff alleges that Defendants violated his rights by "paying him less than the federal minimum wage; and failing to pay him overtime wages for the hours he works [sic] in excess of the 40-hour workweek."[1] Plaintiff seeks to represent "other persons similarly situated, to wit: other hourly workers who worked at CARWASH CARWASH during 2001, 2002, 2003, and /or 2004, who claim they were not paid at least $5.15 for each hour of compensable work time, and who file with this court their consent to sue."[2] Plaintiff asserts causes of action under both the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 *et seq.* and the Texas Minimum Wage Act, V.T.C.A., Labor Coder §§ 201 *et seq.* On September 29, 2004, the Magistrate Judge granted Plaintiff's Motion for Expedited, Court-Authorized Notice to Prospective Class Members. [Doc. No. 46]. Plaintiff was authorized to send notice to "all current and former

---

[1] Plaintiffs.' Original Complaint, ¶ 2.

[2] *Id.* ¶ 10.

hourly-paid car-cleaning employees who worked at any Carwash Carwash location at any time since April 1, 2001."[3] According to Defendants, this notice encompasses some 2,000 employees.[4] On January 12, 2005, after having initially stayed the Magistrate Judge's order, the District court affirmed the order. [Doc. No. 85]. This Court subsequently held a hearing on Defendants' Objections and Motion for Rehearing. Thereafter, the parties provided supplemental briefing and evidence in support of their respective positions.

## II. Plaintiff's Claims

Plaintiff asserts that "Carwash Carwash has a company-wide policy and/or practice of requiring workers to clock in and out in accordance with whether there are a sufficient number of vehicles to be washed" and that "during the time the employees are clocked out, they are required to wait on the premises.[5] Plaintiff worked at only one of the four facilities operated by Defendants and admitted that he had never been to any other facility.[6] Plaintiff does not claim any knowledge of the policies or practices at any other facility. In an affidavit filed in support of the Motion for Court-Authorized Notice, Plaintiff avers that when clocked out, he was often told by various supervisors to wait on the premises.[7] Plaintiff filed four other affidavits from employees at the different locations who made similar claims. Thus, Plaintiff sought to provide notice of this suit to all current

---

[3] Courts September 29, 2004 Order, Document Number 46, at 4.

[4] Defendants' Comprehensive Argument and Briefing in Support of Motion to Vacate Order Signed on January 12, 2005 and Proposed Notice, at 27.

[5] Plaintiff's Memorandum in Support of Plaintiff's Motion for Expedited, Court-Authorized Notice to Prospective Class Members Pursuant to 29 U.S.C §216(b), at 2.

[6] Quiroz Dep., 68.

[7] Pl.'s Mem. in Supp. of Pl.'s Mot. for Exp, Ct-Auth Notice, Ex. A-1.

and former-- since April 1, 2004 -- hourly-paid employees of Carwash Carwash, who claim that they are owed minimum and/or overtime wages. Following the Court's grant of Plaintiff's motion, Plaintiff sent notice to 25 prospective members.[8] Five former employees have subsequently joined this suit by filing a consent to sue.

### III. Fair Labor Standards Act

Pursuant to the FLSA, an employee is authorized to bring an action on behalf of himself and other "similarly situated" employees. 28 U.S.C. §216(b). This type of collective action is meant to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights. *Hoffman-LaRoche Inc. v. Sperling,* 439 U.S. 165, 170 (1989). Thus, the inquiry before the Court is a determination of whether the employees sought to be represented are "similarly situated" to the named plaintiff.

The Fifth Circuit has recognized that there are two different approaches that courts have taken to make this determination. *Mooney v. Aramco Services Company,* 54 F.3d 1207, 1213 (5th Cir. 1995). Some courts have taken the two-step approach found in *Lusardi v. Xerox Corp.,* 122 F.R.D. 463, 465-66 (D. N.J. 1988); while others have followed the "spurious class action" approach delineated in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).

Under *Lusardi,* the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the "notice stage." At this notice stage, the district court makes a decision -- usually based only on the pleadings and any affidavits which have

---

[8] Pl.'s Resp. to Defs.' Compre. Arg. and Br. in Supp. of Mot. to Vacate Order, 12 n. 6.

been submitted--whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives--i.e. the original plaintiffs--proceed to trial on their individual claims. *Lusardi* and its progeny are remarkable in that they do not set out a definition of "similarly situated," but rather they define the requirement by virtue of the factors considered in the "similarly situated" analysis. By their nature, this line of cases does not give a recognizable form to an FLSA representative class, but lends itself to *ad hoc* analysis on a case-by-case basis.

The second line of cases is typified by *Shushan v. University of Colorado,* 132 F.R.D. 263 (D.Colo.1990). *Shushan* espouses the view that §16(b) of the FLSA merely breathes new life into the so-called "spurious" class action procedure previously eliminated from FED.R.CIV.P. 23. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA, but merely desired to limit the availability of Rule 23 class action relief under that Act. The court determined that Congress intended the "similarly situated"

inquiry to be coextensive with Rule 23 class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. Under this methodology, the primary distinction between an FLSA representative action and a FED.R.CIV.P. 23 class action is that persons who do not elect to opt-in to the FLSA representative action are not bound by its results. In contrast, Rule 23 class members become parties to the litigation through no action of their own, and are bound by its results.

Subsequent cases have tended to follow the *Lusardi* two-step approach. Similarly, this Court initially used the two-step approach and, finding that the first inquiry was satisfied, authorized notice to prospective class members. Subsequently, four plaintiffs joined this action but the notice stage was not completed. Defendant thereafter filed a motion to vacate the Court's notice order. The parties have each engaged in discovery in support of their respective positions. At this stage, the Court is convinced that reconsideration is warranted. As detailed below, the Court is now convinced that even if notice to all prospective class members had been provided, such class action would not survive decertification. Accordingly, because the aim of collective actions is to promote judicial economy, the Court now reconsiders it order authorizing notice and for the reasons stated below, hereby vacates such order and denies Plaintiffs' Motion for Expedited, Court-Authorized Notice to Prospective Class Members.

### IV. Similarly Situated

Initially, Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. *Vilatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807 (S.D. Tex. 2003). While similarly situated does not mean identically situated, FLSA class determination is appropriate if there is "a demonstrated similarity among the individual situations . . . some factual nexus which binds the

named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Crain v. Hemerich and Payne International Drilling Co.,* 1992 WL 91946 (E.D. La. April 16, 1992) (citations omitted). Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Id*. at 2 (citing *Burt v. Manville Sales Corp.,* 116 F.R.D. 276, 277 (D. Colo. 1987)).

In the instant case, the Court finds that the action relates to specific circumstances personal to each plaintiff rather than to any generally applicable policy or practice. In particular, Plaintiff alleges that Defendants have an unwritten policy or practice which requires Carwash Carwash employees to wait on the premises during slow periods but employees are not compensated for that time. The following testimony is largely undisputed: Defendants operate five carwash locations in three separate cities; although all locations are under the common control of Defendant Crane, each location is supervised by separate managers; employees are scheduled to work in two different manners - some open at around 7 a.m., others come in at approximately 9:30 a.m. Those employees who are scheduled to open at around 7 a.m. clock in when they arrive and begin work. Those that come in at 9:30 a.m. clock in if there is work to be done; if there is no work, employees start a list identifying the employees to be called to work in the order of arrival.

The point of contention between the parties is what happens during the time employees are off the clock waiting for work; while Plaintiff claims that employees are not free to leave and if they do leave they are punished, Defendants claim that the employees decide whether to stay or leave and the only consequence they face if they leave is they are moved to the bottom of the list if they are not present when their turn to work arrives.

In support of their allegations, Plaintiff has provided the deposition testimony of ten current and former employees. Such testimony, largely anecdotal, does not convince the Court that the purported class members are similarly situated. In particular, of the ten depositions offered by the Plaintiffs, only five employees testified that they were required to wait. However, each offered only anecdotal testimony as to his own experience. Even such experiences varied: one employee testified that someone, whom she could not recall, every now and then told her she could not leave (Briseno Dep., 74, 71); another employee identified one supervisor who denied him permission to leave but nonetheless testified that he sometimes left after three hours yet did not recall ever being punished ( Rodriguez Dep., 48, 50, 59); a third employee testified that he had to request permission from the supervisor to leave and that permission was not always given and that he recalled only one specific instance in which permission was denied (Galvan Dep., 88, 89, 90, 101); a fourth employee testified that he worked at four different Carwash Carwash facilities and all four prohibited him from leaving the premises during this waiting time but that he would nonetheless leave after an hour and a half to two hours (Garcia Dep., 12, 53, 54, 79); and the fifth employee testified that during the times when work was slow, he was sent out to eat two to three times a day and was then required to wait.(Quiroz Dep., 70, 82).

Of the five remaining employees, one testified that he would leave after two to four hours but failed to testify that anybody required him to wait those two to four hours or that he suffered any negative consequences when he left.(Ortiz Dep., 98, 104). Another testified that employees could leave but their name would go to the bottom of the waiting list established by the employees. This same employee also testified that he was told to "be there in the room," and that he would wait but would nonetheless leave after one to two hours and never received more than a verbal warning.

(Guzman Dep., .95, 96, 98, 105-07). The third employee testified that although they were told to wait, an employee could leave if he wanted to leave and that "sometimes they would tell [him], but they wouldn't tell [him], like, it's bad, if you leave you are going to wait more." ( Perez Dep., 50-52, 69). The other two depositions were from Defendant Scott Crane and Javier Salazar, a Carwash Carwash supervisor. Neither supports Plaintiff's position.

The Plaintiff contends that the foregoing testimony supports his contention that Carwash Carwash had in place this policy/practice requiring employees to wait off the clock if no work is available. Defendants contend that even considering this testimony, it is insufficient to show a "single decision, policy or plan." To support their position, Defendants have offered the affidavit testimony of five employees, ranging in longevity from eighteen years to eighteen months, all of whom testified that on days when they reported to work and no work was immediately available, they were free to leave or could wait in the break room[9]. Defendants also offered two affidavits from Defendant Scott Crane, an officer and CEO of Carwash Carwash. Mr. Crane testified that since 1994 and 1988 respectively, Carwash Carwash policy require employees who do not have a fixed schedule to call or check in to see if work is available. If the employee reports in but no work is available, he is free to leave but may wait on the premises.[10] Defendants produced a copy of this policy.[11] Plaintiff has not disputed that this written policy exists.

Based on the foregoing evidence, the Court finds that Plaintiffs have failed to meet their burden of showing that the putative class members were collectively the victims of a single decision,

---

[9] Defs.' Compre. Arg. and Br. in Supp. of Mot. to Vacate Order, Ex. C.

[10] *Id.*

[11] *Id.*

policy, or plan. Plaintiff has presumably presented the testimony most favorable to his position, yet his own witnesses do not support this position. Certain employees have failed to identify any such policy, others have denied it altogether. Further, even when attested to, the alleged policy/practice is not uniform. Each employee testified to different versions at the five different locations operated by the corporate Defendants. There has been no testimony regarding the policy at one location; the Harlingen location, and at best, equivocal testimony at another; Alejando Perez testified that at Weslaco, he could leave if he wanted to. Although five employees testified regarding the practice at the Applebee location, the testimony was conflicting - Mario Guzman testified that employees could leave but that their name would go to the bottom of the waiting list established by the employees. Finally, all the testimony indicates that those who report at around 7 a.m. were able to clock in and no complaints regarding waiting off the clock was made by those employees.

While at the first step, the Court employs a fairly lenient standard, the Court nevertheless finds that Plaintiff has failed to meet his burden and therefore, for this reason alone, finds that denial of the request to proceed with notice to the putative class members is warranted. However, in light of the posture of this case, discussion of other factors generally considered at the second step is warranted.

## V. Second Step

Based upon the testimony presented, the Court finds that the alleged policy/practice does not lend itself to collective inquiry. Defendants contend, and the Court agrees, that in order to prove Plaintiff's claims, the parties would have to engage in extensive discovery since an individual, fact-specific inquiry would need to be made to determine which employees were verbally instructed to wait - the very issue to be litigated in this action. Such individual inquiry to determine who is

similarly situated would defeat the very purpose of a FLSA collective action procedure - to promote efficiency in the judicial system.

Additionally, as previously noted, the corporate Defendants operate five different locations, all of which have different managers and supervisors. Since the alleged policy/practice was communicated to the employees by unidentified individuals, a fact specific inquiry would need to be made at each of the five different locations and each manager/supervisor would need to be queried. Conceivably, all employees would need to be queried as even the testimony supporting Plaintiff's position does not establish that the alleged policy was communicated by the manager or supervisors.

Defendants also argue that, were this case to proceed as a representative action, each opt-in plaintiff would need to be deposed - first of all to determine whether they are in fact a member of the class, and second to address the issue of damages. The issue of damages would certainly require an individual inquiry as the Court would need to determine for each employee found to have been subjected to this alleged policy of the corporate Defendants: 1) whether the employee in fact waited off the clock; 2) the number of times the employee waited; 3) the length of each waiting period; 4) the applicable wage; 5) the number of hours worked during any particular pay period; and 6) any defenses. Such individual inquires do not promote judicial economy.

For the foregoing reasons, the Court finds that this case should not proceed as a collective action. Accordingly, Defendants' Motion to Vacate Said Order [Doc. No 93] is hereby GRANTED. The order authorizing notice, signed on January 12, 2005, is hereby VACATED. Additionally, Plaintiff's Motion to Unseal Information [Doc. No. 92] and Plaintiff's Motion for Extension of Opt-In Period are DENIED. This case shall hereafter proceed with the named plaintiff Jesus Quiroz, and the four additional plaintiffs who have since joined in this action.

IT IS SO ORDERED.

Done this 21st day of September, 2005, in Laredo, TX.

_____
MICAELA ALVAREZ
UNITED STATES DISTRICT JUDGE

**To insure proper notice, each party who receives this order shall forward a copy of it to every other party and affected non-party even though they may have been sent one by the court.**